# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| PAUL RICHARD PAYNE,<br><br>    Plaintiff,<br><br>v.<br><br>STEVEN TURLEY et al.,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:10-CV-422 DB<br><br>District Judge Dee Benson |

Plaintiff, Paul Richard Payne, an inmate at the Utah State Prison, filed this *pro se* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2012). Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915. *See* 28 *id*. § 1915. Before the Court is Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies (Doc. no. 33). Because Defendants' motion relies on materials outside the pleadings, to which Plaintiff has had a reasonable opportunity to respond, the Court will treat the motion as one for summary judgment in accordance with Rule 12(d). *See* Fed. R. Civ. P. 12(d).

## ANALYSIS

### I. Material Facts[1]

1. Plaintiff is an inmate at the Utah State Prison and has been housed in the Uinta 1 facility since December 10, 2003.

---

[1] The facts presented here are drawn directly from Defendants' Memorandum in Support of Motion to Dismiss (Doc. no. 34) and are not disputed.

2.  On or about December 23, 2008, Plaintiff made a written request to receive visits from religious staff/volunteers.  (*See* Amended Complaint (doc. no. 15) at 18.)

3.  Shortly after Plaintiff's first request, Chaplin Feland wrote to Plaintiff and told him to request a visit and specify what denomination he preferred and visits would be arranged.  (*Id.*)

4.  On or about January 8, 2009, Plaintiff made a second request to receive visits from religious staff/volunteers.  (Am. Compl., Ex. 2  (doc. no. 15 at 19).)

5.  Plaintiff renewed his request for visits from religious staff/volunteers on or about March 2, 2009.  (Am. Compl., Ex. 3 (doc. no. 15 at 20)).

6.  On or about April 9, 2009, Chaplin Feland responded to Plaintiff again asking if he had a specific denomination of interest.  (*Id.*)

7.  On or about April 20, 2009, Plaintiff responded to Chaplin Feland stating he was interested in Gnostic/Christian/Jew-Hebrew, including LDS.  (*Id.*)

8.  Four months later, on or about August 20, 2009, the Uinta 1 terminal operator opened Grievance 990872902, wherein Plaintiff grieved regarding access to "Religious Exercise/Freedom."  (Am. Compl., Ex. 5 (doc. no. 15 at 22).)

9.  On September 22, 2009, Defendant Casper, the USP Grievance Coordinator, sent Plaintiff a Memorandum informing him that his Level 1 Grievance No. 990872902 re: Religious staff/volunteer had originally been opened on August 20, 2009, and that due to the lack of a timely response Plaintiff was free to appeal to the next grievance level.  (*Id.*)

10.  Plaintiff advanced his Grievance No. 990872902 to Level 2 on September 29, 2009. (Am. Compl., Ex. 6 (doc. no. 15 at 23).)

11.  On October 1, 2009, Plaintiff was informed that his grievance privileges had been suspended from September 28, 2009, through March 27, 2010, meaning his Level II appeal would not be addressed and he could not appeal his grievance any further.  (Am. Compl., Ex. 7 (doc. no. 15 at 24).)

12.  Utah State Prison has implemented a Grievance Policy and Procedures for inmates to raise concerns and pursue remedies relating to the conditions of confinement and their incarceration.  (Declaration of Billie Casper (doc. no. 35) at ¶ 4.)

13.  Under the USP grievance system, inmates must file a written grievance within seven working days from the time the inmate knows or should have known about a grievable incident. (*See* USP Grievance Policy FDr02/03.03 (doc. no. 34, Ex. A).

14.  Plaintiff's only complaints about religious accommodations arose in April 2009. USP records, and the Exhibits to Plaintiff's Amended Complaint, show that Plaintiff did not file a grievance regarding this complaint (no. 990872902) until August 2009.  (Am. Compl., Ex. 5; Casper Decl. ¶¶ 20, 26).

15.  Under USP grievance policy, an inmate has not exhausted his administrative grievance remedies until he has appealed the denial of his timely initial grievance through Level Three and has received notice of the denial of the Level Three appeal.  (FDr02/03.05, Casper Decl. ¶ 6.)

## I.  Legal Standards

### A.  Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all available administrative remedies before seeking redress in the courts.  Specifically, 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  *See* 42 U.S.C.A. § 1997e(a) (West 2012).  The Supreme Court has held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 992 (2002).  Moreover, the Supreme Court has refused to "read futility or other exceptions into [the PLRA's] statutory exhaustion requirement."  *Booth v. Churner*, 532 U.S. 731, 741, n. 6, 121 S. Ct. 1819, 1825 (2001).  As explained by the Tenth Circuit, "[t]he statutory exhaustion requirement of § 1997e(a) is mandatory, and the district court [is] not authorized to dispense with it."  *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003).  Failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving.  *See Jones v. Bock*, 549 U.S. 199, 212, 127 S. Ct. 910, 919 (2007).

Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *before* filing a complaint in federal court.  *See Porter*, 534 U.S. at 524 (citing *Booth*, 532 U.S. at 741).  However, it is well recognized that "a remedy that prison officials prevent a

4

prisoner from utilizing is not an 'available' remedy under § 1997e(a)." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001); *see also Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002). Thus, "inmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies." *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002).

### B.  Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Cellotex v. Catrett*, 477 U.S. 317, 325 (1986). This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998)

Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.* Rule 56(e) requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998). The specific facts put forth by the nonmovant "must be identified by reference

to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992). Mere allegations and references to the pleadings will not suffice. However, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

The Tenth Circuit has recognized that, given the fact sensitive nature of exhaustion determinations, "a motion for summary judgment limited to the narrow issue of exhaustion and the prisoner's efforts to exhaust is appropriate." *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1211 (10th Cir. 2003), *abrogated on other grounds by Jones*, 549 U.S. 199. When deciding such a limited motion for summary judgement the court applies the same procedures used for other summary judgment determinations. Thus, the moving party bears the initial burden of showing that there is an absence of evidence to support the plaintiff's contention that he exhausted all available administrative remedies. Once the moving party has made such a showing, the burden then shifts to the nonmoving party to produce admissible evidence showing that genuine issues of material fact exist precluding summary judgment on the exhaustion question.

### III. Defendants' Motion to Dismiss

Plaintiff's Amended Complaint asserts three separate claims: (1) violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) based on Defendants' failure to provide Plaintiff visits from religious staff or volunteers; (2) violation of

the First Amendment right to petition government for redress of grievances and denial of due

process based on Plaintiff's six-month suspension from the prison administrative grievance

system; and (3) violation of the First Amendment based on retaliation for Plaintiff's exercise of

protected rights.  Although Defendants' supporting memorandum addresses only the first claim,

they appear to seek dismissal of Plaintiff's entire Amended Complaint.  Because Defendants'

supplemental materials relate only to Plaintiff's religious access claim the Court will first

address that claim under the summary judgment standard before deciding whether Plaintiff's

additional claims are subject to dismissal on screening under 28 U.S.C. § 1915(e).

### A.  Free Exercise/RLUIPA Claim

Defendants assert that Plaintiff's claim regarding denial of religious visits is barred under

the PLRA because Plaintiff failed to properly exhaust this claim through the prison's

administrative grievance system before filing suit.  Specifically, Defendants contend that

Plaintiff's initial grievance regarding this alleged deprivation was untimely because it was not

filed within seven working days from the time Plaintiff knew or should have known about the

deprivation, as required under prison guidelines.  Plaintiff contends that because his claim did

not stem from a specific incident, but from an ongoing deprivation, the seven day time frame is

inapplicable.  Plaintiff further asserts that Defendants waived this argument by actually

processing and responding to his grievance at Level I before suspending him from the grievance

system for six months.

Plaintiff's arguments regarding the applicability of the seven day time limit are not

persuasive.  Plaintiff admits that after responding to Chaplain Feland's inquiry regarding

Plaintiff's religious denomination he waited nearly four months without making any further

inquiries before filing a grievance.  This was after Plaintiff sent a previous letter to Feland

without receiving any response at all.  Plaintiff now contends that he merely wanted to allow

Feland ample time to respond before filing a grievance.  This explanation is not believable.

Based on Plaintiff's prior experience and knowledge of the grievance requirements Plaintiff

should have filed his initial grievance immediately after not hearing from Feland the second

time.  Plaintiff's failure to do so made his subsequent grievance untimely under the grievance

policy.

        In addition, accepting Plaintiff's excuse would undermine the primary purpose for the

grievance system, which is to promote the timely resolution of inmate grievances at the lowest

possible level before they result in costly litigation.  The obvious purpose for the seven day filing

deadline is to ensure that prison officials are notified of problems while they are still fresh and

can be readily addressed.  By waiting months before grieving Feland's failure to respond,

Plaintiff made it much more difficult for grievance officials to determine what happened with

Plaintiff's request and why.  Plaintiff's failure to follow up could also have been interpreted as

an indication that he was no longer interested in the matter.  In any case, if Plaintiff had filed a

timely grievance promptly after not hearing from Feland prison officials could have resolved the

matter quite easily.  By not doing so, and instead filing a grievance months later, Plaintiff made

it much more difficult for prison officials to address his grievance, which may explain their

failure to timely respond to his initial grievance.

8

Plaintiff's assertion that Defendants waived this defense by initially processing Plaintiff's untimely grievance is also unavailing.  Plaintiff offers no support for his contention that prison officials must raise the untimeliness issue at the initial level or be barred from asserting it at subsequent grievance levels or in court.  Although Plaintiff points to other instances where his grievances were rejected as untimely at the initial level, he does not identify any rule that bars considering the timeliness of grievances at subsequent levels, nor does he make any compelling argument for that approach.  In fact, such a rule would undermine the grievance process by preventing officials, if they so choose, from addressing concerns raised in an untimely grievance. While prison official always retain the option to address untimely grievances if they so choose, an inmate cannot be deemed to have exhausted available administrative remedies if he does not file a timely grievance.  Moreover, the record shows that Defendants never actually addressed the merits of Plaintiff's grievance but merely noted that it had been filed and that no timely response had been issued, qualifying it for further appeal.  The fact that Plaintiff was prevented from actually appealing it due to being suspended from the grievance system does not excuse the untimeliness of his original grievance.

Because Plaintiff has not met his burden of showing that he properly exhausted available administrative remedies regarding his religious accommodation claims the Court concludes that Defendants are entitled to summary judgment on this claim under the PLRA.  Assuming the alleged denial of religious visits is ongoing Plaintiff can always complete the grievance process and file another lawsuit if his concerns are not resolved.

## IV.  Screening

### A.  Legal Standard

Under 28 U.S.C. § 1915(e)(2)(B), a court shall dismiss "at any time" claims filed *in forma pauperis* if they are frivolous, malicious or fail to state a claim upon which relief can be granted.  *See* 28 U.S.C.A. § 1915(e)(2)(B) (West 2012).  "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."  *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999).  For screening purposes, the Court "presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

Because Plaintiff is proceeding pro se the Court must construe his pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers.  *Id.*  However, "[t]he broad reading of the plaintiff's complaint does not relieve [him] of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Id.*  While Plaintiff need not describe every fact in specific detail, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."  *Id.*

To state a viable claim "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)).  The requirement of plausibility

serves "not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Id*. at 1248. And, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [his] claims." *Ridge at Red Hawk, L.L. C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

## B.  Suspension from Grievance System

Plaintiff asserts that Defendants violated his First Amendment right to petition the government for redress of grievances and denied him due process by suspending him from the prison administrative grievance system.[2] The essence of Plaintiff's claim appears to be that given the PLRA's exhaustion requirements Defendants are interfering with Plaintiff's ability to litigate his claims by preventing him from exhausting them through the prison grievance system. This argument appears to be based on a misunderstanding of the exhaustion requirement and the role of the grievance system.

Under Tenth Circuit precedent a "prisoner is required to exhaust only those

---

[2]  Plaintiff's references to due process are clearly misguided as the Tenth Circuit has recognized that prison grievance procedures do not create a protected liberty interest and, therefore, do not implicate a prisoner's due process rights. *See Murray v. Albany County Bd. of County Comm'rs*, No. 99-8025, 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000) (unpublished) ("[P]rison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.'") (quoting *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)).

administrative remedies that are 'actually available.'" *Basham v Uphoff*, No. 98-8013, 1998 WL 847689, at *4 (10th Cir. Dec. 8, 1998)(quoting *Garrett v. Hawk*, 127 F.3d 1263, 1265 (10th Cir. 1997). As recognized by other circuits, "a remedy that prison officials prevent a prisoner from utilizing is not an 'available' remedy under § 1997e(a)." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001); *see also Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002). Thus, "inmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies." *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002).

In accordance with the Supreme Court's decision in *Jones v. Bock*, 127 S. Ct. 910, 921 (2007), the Tenth Circuit no longer considers exhaustion of administrative remedies a pleading requirement. Thus, nothing prevents an inmate from filing a suit with unexhausted claims. However, once exhaustion is raised as an affirmative defense the inmate will be required to present evidence showing that all *available* administrative grievance remedies were fully exhausted. But, this can be accomplished either by showing compliance with all the necessary grievance procedures, or by showing that efforts at exhaustion were thwarted by prison officials, effectively making them unavailable. Under this framework it would be impossible for prison officials to prevent an inmate from litigating claims merely by obstructing his access to the grievance system. Thus, Plaintiff's allegation that he was denied access to the courts by being suspended from the grievance system fails to state a claim on which relief can be granted.[3]

---

[3] It bears repeating that the suspension did not prevent Plaintiff from exhausting his religious accommodation claim here, rather, it was Plaintiff's failure to file a timely grievance

### C.  Retaliation

Plaintiff alleges that Defendants retaliated against him for filing grievances and litigating claims before this Court by suspending Plaintiff from the grievance system.  Specifically, Plaintiff alleges that shortly after filing a motion to add Tom Anderson as a defendant in another case here (2:04-CV-844-DN), Defendant Kingsford took action to have Plaintiff suspended from the prison grievance system.  Plaintiff asserts that Kingsford was acting at the behest of Defendant Tom Anderson.

The Tenth Circuit has held that "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights," *Fogle v. Pierson*, 435 F.3d 1252, 1263-64 (10th Cir. 2006), it has also noted that "[s]everal circuits have held that a prisoner's first amendment right to petition the government for redress of grievances encompasses the filing of inmate administrative appeals," *id.* at 1264.  To state a viable retaliation claim a plaintiff must allege facts showing: "(1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct."  *Howards v. McLaughlin*, 634 F.3d 1131, 1144 (10th Cir. 2011) (quoting *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir.2009))(further citations and quotations omitted).

Under this standard the plaintiff bears the burden of proving that he was engaging in

---

prior to the suspension which bars that claim.

constitutionally protected activity.  A plaintiff cannot satisfy the first element if his alleged protest was frivolous or if he had no right to engage in the alleged activity.  *See, e.g., Lewis v. Casey*, 518 U.S. 343, 352–53 (1996) (holding prisoners' constitutional right to access courts not violated if claim interfered with was frivolous).  Regarding the second element, it is not sufficient that the plaintiff prove that he would be chilled by the conduct; instead, the test is objective: Would a person of "ordinary firmness" be chilled.  This test is also specific to the type of "person" involved—a citizen, employee, or prisoner.  *See Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004) (noting test encompasses "similarly situated" person of ordinary firmness); *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (articulating test as "inmate of ordinary firmness"); *Perkins v. Clayton Twp.*, No. 2:08-CV-14033, 2009 WL 3498815 (E.D. Mich. Oct. 23, 2009) (unpublished) ("[P]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens before an action taken against them is considered adverse." (citations and quotations omitted)).  Finally, a plaintiff must prove but-for causation—that the retaliatory purpose is the "decisive factor" in the adverse action.  *Strope v. McKune*, No. 09-3283, 382 F. App'x 705, 2010 WL 23332079 (10th Cir. June 11, 2010) (unpublished).  The plaintiff bears the burden of proving causation.  *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

Even accepting that Plaintiff's grievances and legal filings were not frivolous, making them constitutionally protected conduct, Plaintiff has not alleged sufficient facts to support the two remaining elements of a retaliation claim.  Most importantly, Plaintiff has not alleged that Defendants' actions caused Plaintiff any injury that would chill an inmate of ordinary firmness

14

from continuing to file grievances or litigate cases.  There is no indication that Defendants'

conduct had such an effect on Plaintiff, who not only continued with his previous lawsuit but

subsequently filed the present case and at least one other of which the Court is aware (*Payne v.*

*Herman*, 2:10-CV-684-DB).  Moreover, the Court's own experience indicates that prisoners are

rarely dissuaded from filing lawsuits by being suspended from the prison grievance system.  In

fact, such suspensions routinely result in lawsuits with claims similar to this one.

       Plaintiff's allegations are also insufficient to show a plausible connection between the

filing of his motion in case number 2:04-CV-844-DN and his suspension from the grievance

system.  Plaintiff's only specific allegation regarding causation is that Kingsford's action to

suspend Plaintiff from the grievance system occurred just twenty-three days after Plaintiff's

motion involving Tom Anderson was filed.  Plaintiff further asserts that Kingsford's comments

at the suspension hearing show that he was acting at the behest of Defendant Anderson.[4]  Even

accepting the assertion that Kingsford was acting on behalf of Anderson, the timing of the

incidents is not sufficient to support a finding that the suspension would not have occurred but

for Plaintiff's motion.  *See Northington v. Zavaras*, 229 F.3d 1164 (10th Cir. 2000) (unpublished)

("[T]iming alone does not supply an inference of retaliation.").  Moreover, the record shows that

the reason for Plaintiff's suspension from the grievance system was Plaintiff's filing of repeated

grievances regarding the contract attorney's alleged confiscation of a protected document which

Plaintiff had no right to possess in the first place.  (Am. Compl. Ex. B.)

---

     [4]  Plaintiff does not specifically state what these comments were, nor did he include a
transcript or recording of the hearing with his complaint.

15

Thus, the Court concludes that Plaintiff's allegations regarding retaliation are insufficient to state a claim on which relief can be granted.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies (Doc. no. 33) is **GRANTED** as to Count I of the Amended Complaint;

(2) Plaintiff's remaining claims are **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief can be granted; and,

(3) this case is **CLOSED**.

Dated this 12th day of September, 2012.

BY THE COURT:

DEE BENSON
United States District Judge

16